Calcano v. Swarovski North America Mr. Coppell. Yes. Good morning, your honors, and may it please the court. I'm Oliver Coppell and I represent plaintiffs in five cases before you. They all allege that merchants violated the Americans with Disabilities Act by failing to provide gift cards that are accessible and utilizable by the blind because they do not provide any information in Braille. That's the ADA violation. They were all decided by Judge Gregory Woods and are all essentially identical. And the dismissal on a 12 v. 5 motion to dismiss are based on two determinations. First, that plaintiffs do not have standing, and second, that the ADA does not require that gift cards be imprinted with information in Braille. And in analyzing whether the plaintiffs pleadings meet statutory requirements, I must admit I was assisted by Judge Katzmann's book, Judging Statutes, because Judge Woods' decisions have to be analyzed in light of the legislative intent in enacting the ADA. And one doesn't have to go too far to discern legislative intent, because the ADA was first enacted in 1990, but comprehensively reenacted in 2008. And it's an interesting statute, because it specifically states in its preamble that the 2008 amendments were necessary because Congress had found that the 1990 statute was too narrowly interpreted by courts. And I think it's quite unusual in the preamble to the legislation. It specifically states that this amendment was enacted to overturn specific identified court holdings where Congress states the courts had overly narrowly interpreted the ADA. The lesson, therefore, is that it's the intention of this legislation to have a broad interpretation of the ADA. And in fact, I think, Judge Katzmann, you mention in your book that particular aspect of this legislation. The fact is, unfortunately, Judge Woods, in deciding these cases, I think was influenced, unfortunately, by his antipathy to serial litigation of this type. In fact, in one footnote, he goes on to say- This is Judge Parker. Can I ask you a question about standing? The Second Avenue Diner standard requires us to look at the past frequency of visits, and then the proximity of the store to the home. And as I read the complaints on the first part, just focusing on the past frequency, all they say is that each plaintiff has been a customer at the defendant's store or restaurant. What does that mean? What does that tell us about frequency? That could be once, it could be weekly, and we just don't know. Can you shed any more light on that? Well, I would say that it isn't necessary that they have visited the stores frequently. It's necessary that they have visited the stores, I suppose, because that shows that they were discriminated, or they would be discriminated against, or they have been discriminated against, because the gift cards weren't available. I don't think they have to have visited the store The idea, first of all, in the diner cases, the plaintiffs never actually went into the diner, because there was a ramp that prevented them from going into the diner. That's certainly true in the Chrysler case. There was a ramp. They never actually went there or ate there. They just went nearby there, which shows that- Okay. Well, I guess then the deterrence idea may go to the second inquiry, which is the proximity to the home. I think for a couple of these, Jersey Mike's, Artichaving, Kohl's, the plaintiffs don't even live in the same borough. In New York City, that seems a bit of a stretch to say that they're deterred from going. It's one thing if the Taco Bell is on the same block, but if you're traveling from Bronx into Manhattan to get a sandwich, that seems a little bit implausible, doesn't it? No, I don't think so at all. In fact, I think Jersey Mike's has lots of branches near the beach, and you might well go to the beach and get a pizza there. I just think- Well, can you tell me anything about specifically the plaintiffs here? I guess what I'm getting at is that the complaints themselves are very vague and don't have any specificity about what the history was of visiting a store, why they would go there if they lived in a different borough, and your hypotheticals or response that it's not necessary to plead those things, I don't think gets to the point that I'm trying to get at. Well, let me just say that the Hardy case, which is in this circuit, decides that even if you're going to a particular place or going to go to a particular place to test whether the ADA provisions have been complied with, that's sufficient to grandstanding. That's the Hardy case. The fact that they were there, yes, they have to have been there. In this case, they all indicate they actually shopped there. It's better than the diner where the person just said he passed in front of the diner. Here, they actually patronized the store. As I said before, as I said just now, actually, the Hardy case teaches us that even if they're doing it as testers, and the fact is, again, and I'll briefly talk about how the courts have repeatedly stated that the intention of the statute to have attorneys bring these suits as private attorneys general to test out whether the ADA is being complied with. No lesser authority, no greater authority than Judge Beginsburg says that the role of lawyers in bringing these suits is to act like private attorneys general. I think that the second Avenue diner case, among other things, appears to be something other than a pure requirement to plead constitutional standing in a complaint. There, it seems to, or the panel seems to have been helped by testimonies from Mr. Kreisler in the context of a motion for injunctive relief. So I also thought that you might have said, but you correct me if I'm wrong about this, that even in this context, when we're talking about constitutional standing at the motion to dismiss stage, the complaint stage, it's very minimal. And here, as I understand it, the allegation that Judge Woods in candor grappled with says that the plaintiff, the allegations across the complaints, as I understand it, say that the plaintiff intends to immediately purchase at least one story gift card from the defendant. And I think what Judge Park is getting at is that it does not have other factual allegations about where they live, whether they are in close proximity to these stores, and so on. But why isn't it enough to, at this stage, when we're talking about Article III standing in a complaint, of the plaintiff intends to immediately purchase, or to go back to the store? Why wouldn't it be enough, for example, to just say the plaintiff intends to frequent these stores? I think it is enough. But in addition, the complaint actually does state that they live in proximity to the stores. And it also states that they actually shop there. It states that they shop there. The complaint states that they shop there. I can read you from the complaint. I'm just looking to indicate that. Just a moment, please. I'm just looking for that. It has been a customer, I think, is the language. Yeah, that's looking back. Yeah, but it also states that they live... that they intend to return. And if the gift card is offered, they would intend to return and buy a gift card. I think that's more than sufficient to allege that they would be injured in the future, and that they require an injunction to avoid that injury. I have a... This is Judge Katzmann. As to Kohl's, I have a question. The operative complaint, as I understand it, alleges that one of Kohl's stores is located within a block of the plaintiff's residence, which I understood to be West 23rd Street in Manhattan. I think there's a mistake there. I think that that may be a mistake. Because there's no Kohl's store there. Yes, I think that may be a mistake, Your Honor. But you're correct. I think that that may be a mistake in that particular case to state that it was nearby. But again, I think here we state specifically that they actually shopped there in the past. So obviously, they can get there, because they allege, and again, we have to accept these pleadings as true on its face, or perhaps, as suggested, I believe, in the Hardy case, in the Bernstein case, a hearing could be held on these issues, if that's a question. But I think for you have to accept the pleading. And I think that the skepticism expressed by Judge Woods, I mean, I don't think that's appropriate in deciding a pleading issue. If, in fact, discovery proves out that, in fact, the individual didn't shop there in the past, then perhaps it could be dismissed, or if it was impossible for the plaintiff to get to the store. Your time has elapsed. You'll have three minutes for rebuttal. But if I could just ask you this one question. Would you help me by showing me where it's been alleged that Braille is the only effective means or auxiliary aid? Yes. Paragraph 7 of the complaint says, without an auxiliary aid such as Braille, plaintiff cannot independently access the information like a sighted person to make a purchase in store because the card is not distinguishable for other cards or through a website or by phone with a customer service agent because certain of the unique gift card, the card number and other important information cannot be independently identified. And I think it's important here because the defendants make a great deal out of the possibility of a store agent assisting the person. First of all, if a store agent is going to assist a person and the Braille markings, the agent would have to go through the customer's wallet and look at all of the cards to find whether there's a gift card there. But more importantly, these gift cards are used, many of them are used on the phone by customers seeking to know what balance is left on the card and then perhaps making a purchase on the phone by reference to the gift card. So that's, there's no store agent in the person's home when they're calling the store to inquire and they have a card that they can't even identify. It's also important, these are gift cards. So they're obviously going to be given as gifts. If they're given as gifts to a blind person and they have no Braille on them, how is a blind person going to ascertain what this is about? It's a card. Okay, thank you. You'll have three minutes, I believe you've asked for three minutes. I'm going to go ahead and open it up to questions from your adversaries. Mr. Vadas? Good morning, Judge Katzman, and may it please the court. I'm Michael Vadas from Steptoe & Johnson and I will handle the standing issues and my colleagues will handle the ADA issues with their allotted time. I'd like to focus on the standard and why the appellants have not met any of the three prongs of the standards, of the standard that this court enunciated in the 2nd Avenue Diner case. First, they haven't alleged any actual injury under the ADA in the past. They also haven't alleged that the injury is likely to continue. And third, I think what this court has rightly focused on, they have not alleged sufficient facts to make it plausible that they will be harmed imminently in the future. And ultimately that is the standard for seeking an ADA injunction against future harm. Is any harm imminent in the future? And this court has made clear in the 2nd Avenue Diner case, in the Camarillo case, and in other cases, that in order to render a claim of future harm plausible, there have to be some factual allegations, not merely conclusory assertions, but factual allegations to make it plausible that the plaintiff will visit the location where he alleged previous harm and be harmed again. Here there are no such facts whatsoever. The appellants merely allege in the most general terms that they shopped at the appellee's stores in the past and that if the appellee's offered gift cards with Braille, they would buy them in the future. There are no allegations about what locations they visited in the past, how frequently they visited those locations in the past, what they might have bought, what they might be interested in buying. No allegations that they visited other stores in the vicinity of the appellee's stores. Nothing of that sort whatsoever. This is Judge Park. Can you explain why that's not, why that's necessary at this stage? I mean, I guess to Judge Loya's point, you know, for pleading purposes, they've said that they, I think the theory is one of deterrence, that they don't have to actually go back and get rejected repeatedly. They know that they don't provide the Braille gift cards and they've said that they will buy the card and use them as soon as they become available. Why isn't that enough? It's not enough because it's what the Supreme Court has called merely a someday intention. That is, they've said that someday they intend to return without any specifics. The Supreme Court in the Lujan decision and just a month ago in the Carney v. Adams case, the court has reiterated that these sorts of general expressions of intent to return or to take some action are insufficient. These are someday intentions that just don't meet the standards. No, but I don't know if that's right. The someday is when you guys provide what they need to use the Braille gift card. It's not abstract. It seems actually quite specific that their intention to return. Your Honor, what the court's decisions require is that they put some meat on the bones of their allegations that they will buy these cards in the future and be harmed. While they allege we will buy these cards if they're available, they don't allege at what locations they would intend to use these, when, or how close they might live to these locations. These are the sorts of factual allegations that are necessary to make it plausible that they will in fact be harmed in the future. This is what the want to finish, let me know. What's odd to me about this, but you might perhaps be able to help me out, is that if we were to get past the pleading stage and in fact get to trial and any of the plaintiffs simply testified before a jury or Braille gift cards available without any more elaboration, and the jury credited that testimony because they seem credible, that would be, I think, enough to satisfy the intent to return requirement. Now, there may be other things that your colleagues, I think, will deal with that I might agree with, but I'm having a hard time understanding how if just the mere testimony along the lines of what appears in the complaint was enough to satisfy that prong, an allegation to that reasonable requirement of constitutional Article III standing at this stage. Can you help me? Yes, Your Honor. I think to get to that stage, a court needs to find that harm is imminent, and under the standards that this court has applied in the Second Avenue Diner in Camarillo and Hardy, and that the Supreme Court expressed in Lujan and most recently, just a month ago, in Carney v. Adams, it is said that these general expressions of intent are insufficient to allege imminent harm. Second Avenue Diner doesn't say quite that, right? It says here are some indicia, obviously in the context of the motion for that at this stage, at the complaint stage, for purposes of showing Article III standing, that we require more than what's here. The Bernstein case is a good example, I think, Your Honor, where the plaintiff alleged that Central Park was inaccessible, and he had far more allegations than any of the appellants in these cases before you. There he alleged that he visited Central Park frequently and laid out the frequency hundreds of times in the past, talked about how frequently he visited New York, and specified the sorts of things that prevented him from visiting the parts of Central Park that he wanted to visit. And the court said that his allegations of visits in the past were insufficient to show anything more than a someday intention to return to Central Park. And here, the appellants don't even allege anything close to what this court found insufficient in the Bernstein case. So I think that's a good example. And again, just to go back to the 2nd Avenue Diner case, there the appellant specified the address of the location that he intended to visit, that it was several blocks from his home, not in a different borough or a different county or even a different state, but just several blocks, that he passed it three or four times a week, that he frequented other restaurants in his neighborhood. Those were the sorts of things that prevented him from getting past a motion to dismiss. But again, there's nothing even remotely like those allegations in this case. And so I think for that reason, none of the appellants has met the standard of showing that future harm is imminent, because they just haven't alleged anything about when they intend to return to one of the appellee's locations. They also haven't met the... Thank you, Mr. Vadas. Ms. Schuster? Thank you, Your Honor, and may it please the court. I'm Stephanie Schuster, here on behalf of Swarovski and Banana Republic. In addition to failing for the ADA does not require businesses to carry special goods for individuals with disabilities. That means a bookstore has no obligation to sell Braille books, and it means defendants have no obligation to sell Braille gift cards. Plaintiffs seek to avoid this straightforward result by characterizing gift cards not as goods, but as services, public accommodations, or auxiliary aid. Each of those arguments fails under the plain language of the statute and applicable regulations. First, whether a gift card is a good or a service is legally insignificant here, because the ADA does not require specialized goods or specialized services. Second, gift cards are not public accommodations, because they do not fit the statutory definition of public accommodation. A gift card is a product sold at or by a place of public accommodation, not the public accommodation itself. And third, as will be addressed by my colleague, Mr. Lynette, Braille writing on gift cards is not a necessary auxiliary aid. Could you also explain why a gift card cannot be both a good and access to goods? I'm having trouble understanding why a gift card doesn't provide access to goods, even if it's not a good itself. Well, Your Honor, a gift card is a good when it is purchased. Post-sale, the way it's used by the recipients, the gift recipients, it may be viewed as an exchange or barter or as a service, but I think the more salient point is that it doesn't matter whether they're goods or services or at which point, because the ADA does not dictate what a good is and not the content of whatever a covered entity offers. That's actually my question. We were talking about access to goods. Why isn't a gift card an access to goods? I have a gift card that allows me to purchase all kinds of things. Right, Your Honor. So when courts discuss the access to goods versus the content of goods, they mean that the goods need to be made available on equal terms to individuals with disabilities and individuals without, to all people, not whether they're able to use and discern information on a particular product while they're using it. It's whether the goods are available. And this is not a case where plaintiffs allege that they will refuse the sale of the gift card that they wanted to purchase. It's that the defendants did not stock the kind of specialty gift card with braille writing that they wanted. And that access-content distinction applies to goods, and it applies to anything else a business offers in the terms of the statute, goods, services, facilities, privileges, advantages, or accommodations that a business might sell. That is why the 5th, 6th, 7th, and 9th circuits have all recognized businesses do not have to offer different goods or different services to comply with the ADA. So regardless of whether a gift card is characterized as a good or as a service, the ADA does not require defendants to sell gift cards with braille writing. And regardless of whether they're goods or services, gift cards are not places of public accommodation. The statutory definition of public accommodation lists 12 broad categories of the places that qualify, like places of public gathering, transportation stations, and establishments serving food or drink. It is undisputed here that gift cards do not fit within any of those broad categories. All 12 are places where goods and services are sold, not the goods or services themselves. The plaintiffs asked this court to create a 13th all-encompassing category, but the list of 12 in… Is that part of the statute, or is that part of a manual? That the 12 categories are exhaustive? Yeah. Your Honor? Yes. So that follows from the plain language of the statute, where the statutory definition… Is it in the statute? In the statute, the statute says in Section 12181, subsection 7, the following private entities are considered public accommodation. And by the expressio unius canon, that statutory list is finite and complete, and that is how the Department of Justice, in the manual, the guidance manual, interprets the statutory language, which we've submitted to correct. And that interpretation is required to encode deference under this court's decision in null. And it's also the unanimous view of the courts who have considered the question, including the Fifth Circuit and the district court decisions that the plaintiffs rely on. But the list is exhaustive based on its plain language, and that a 13th category can't just be created by the courts. That would need to happen from Congress. Now, plaintiffs' ancillary argument that a place of public accommodation doesn't need to be a physical place is beside the point here. Because this case doesn't present the question whether non-physical places, like websites, are places of public accommodation under the ADA. Indeed, even the district courts that read the ADA so broadly recognize that a non-physical place still needs to fit one of the 12 statutory categories. Ms. Schuster, can you hear me? Do either of my colleagues have any questions? I do not. Thank you. Me neither. Thank you. Your time has expired. Thank you. We'll proceed to Mr. Lynette. Thank you, Your Honor. May it please the court, my name is Joseph Lynette, and I'm here on behalf of Appellee's Jersey Mike's and the Art of Shaving. In accordance with the letter submitted to the court, I will be addressing whether appellants plausibly allege the denial of necessary auxiliary aids and services. It is our position that the decision of the district court granting appellees' motions to dismiss is in accordance with the law, and we respectfully submit it should be affirmed. The district court identified the service appellees allegedly want, the opportunity to make purchases from the appellees using a store gift card. The district court correctly held that the appellant's allegations deemed true did not show that they would deny the opportunity or that opportunity because of a refusal by appellants to provide auxiliary aids and services. Appellant's allegations that they would deny auxiliary aids and services is simply based on one phone call asking an unnamed employee of each appellant whether the business sells Braille gift cards. The appellees were allegedly informed that each did not sell those kinds of gift cards. The First Amendment complaint also alleged that these unnamed employees did not offer auxiliary aids with respect to the gift cards, and plaintiffs could not otherwise locate an accessible card. No allegations that appellants identified themselves as blind individuals, whether they wanted to purchase a gift card, or that only a Braille gift card met their accessibility needs is found in any of these complaints. These allegations, even if deemed true, do not state a claim of discrimination under the ADA. First, appellees, the district court correctly found, never asked for auxiliary aids and services. The DOJ regulations and the Title III Technical Assistance Manual all indicate clearly that the obligation for the person needing auxiliary aids and services is to request them and for a conversation to take place following that request. Plaintiffs failed to plausibly allege that they made a request. The most they did allege was that they inquired by phone if the business sold Braille gift cards. There is no allegation in the First Amendment complaint that appellees were asked to have such a conversation and that the request was denied. In fact, just the opposite, the allegations show that each of our employees were available to answer questions the appellants had regarding their gift cards. Second, the First Amendment complaint simply alleges that the appellant's employees told them that they did not sell Braille gift cards. However, even if deemed true, plaintiffs can still fail as a matter of law based on several cornerstone principles regarding the requirements of public accommodations to provide auxiliary aids and services. First, as pointed out by Ms. Schuster, it is our respectful submission that gift cards are goods and are not required to be altered to be made accessible. Even assuming that the Braille gift card is the appellant's preference, which I think it clearly is under the allegations in the complaint, the law is clear that the appellees are not entitled under Title III to the auxiliary aids and services of their preference. The implementing regulations make clear that's the ultimate decision as to what measures to take to provide effective communication and that rests with public accommodation. Can I ask you a question? Yes. Someone calls a store employee and asks about the availability of a Braille gift card. Why doesn't that sufficiently put the employee on notice that the person might be blind and might need an auxiliary aid? Your Honor, because I think that information is vague as to the inquiry itself. I mean, the simple question is do you sell Braille gift cards? The answer is no. That doesn't indicate that the person may need or needs a Braille gift card or anything of the like. I mean, the purpose of, and this really should not be a controversial matter, because oftentimes individuals with disabilities don't have difficulty or are not vague about the auxiliary aids that they want. Clearly, they've alleged it in their complaint that they can do that. So, you know, the statute does require notice and a simple inquiry, you know, it's really out of the blue. Recall the alleged context here also, which is it was a phone call, you know, out of the blue. Nobody saw the person. It was just a call asking whether Braille gift cards were sold. And the honest answer and the truthful answer was no. That doesn't amount to a denial of auxiliary aids and services had the conversation or had the appellees permitted the conversation to continue. Because what would naturally happen in a situation like this is you would identify yourself as somebody who was interested in purchasing a gift card, either on behalf of yourself or a blind person, and wanted to know if you have Braille gift cards, and if not, how does a blind person use those gift cards. Had that kind of simple discussion or follow-up taken place, there would have been a conversation. I will note, Your Honor, that... And what, well, Mr. Linnett, this is just low-yay. I take it that what you're also saying is that that's not even alleged. Correct. That's not alleged at all. And it didn't happen. And if you'll note, Your Honors, these alleged inquiries, you know, surreptitious inquiries to each of the appellees was made just days before the complaints were actually filed. So, you know, I think that that should not be lost here. It bears mentioning that there really... Was there really an intent to have a real discussion about what the plaintiffs, although allegedly wanted? And the fact of the matter is that, as Mr. Brewster pointed out, that the notion that only a Braille gift card is the only effective auxiliary agent services is contrary to the vast weight of the law that the parties recited in their opposition briefs. Thank you. Judge Park, do you have any questions? No, thank you. We will now hear from Mr. Coppell, who has three minutes in rebuttal. Mr. Coppell? I'm sorry. You couldn't hear me. I'm sorry. I had it on mute. I'm very sorry. Let me start again. I'll go quickly. First of all, on the issue of standing, the complaint specifically states, plaintiff has been a customer of defendant's stores on prior occasions, intends to immediately purchase one store gift card as soon as defendants sell store gift cards that are accessible to the blind and utilize it at defendant's retail store. And then it says that defendant has failed to provide visually impaired persons with a particular level of services available to non-disabled persons. And later on in the complaint, it states specifically that plaintiff lives in the Bronx and the store is accessible to the plaintiff. So the fact is that standing, pleading of standing is met, it's specifically met, and as pointed out earlier by His Honor, if these allegations were made to a jury, that would satisfy the standing requirement. No further information is required, and the diner cases are not to the contrary. All they state is that the individual passed the diner, couldn't get in because there was no ramp, and that if the ramp was there, they would go there to eat. Judge Wood's suggestion that you have to say what you would buy with a gift card orders on the ridiculous. If you're going to get a gift card, you don't necessarily know what you're going to buy. You might give the gift card as a gift to someone else. You certainly don't know what they're going to buy. And we specifically plead that alternative services are not sufficient, especially not sufficient if one is going to use the gift card at home and communicate either by computer or over the phone. So I think that the requirements of standing are more than met. And again, you've got to look at the legislative intent in the passage of ADA, even in looking at the standing issue. And the purpose of this statute is to provide that a person who is blind, what is available to that person, especially in line of services, in terms of services, is to provide those services to a blind person the same way those services can be provided to a sighted person. Now the question of where these are not goods. Judge Woods himself, when he introduces the case, says that the following. He says, and when he defines what a gift card is. You have 30 seconds. My time is up? You have 30 if you can complete your thought and then your time is up. Okay. Judge Woods specifically states that goods are, in fact, they can be used in place of cash at its stores. The fact is that these are services. They should be available as the statute specifically states. Services should be made available to blind persons or disabled persons the way they are made available to able persons. And, again, these people could be testers, as said by the hardy. They do not need to show that they are going to go to these stores every day. They just need to show that they would buy the gift card if it was made accessible to them. And that, in this case, that has not been shown. Therefore, an injunction is required to enable the blind to utilize the gift card the same way a sighted person can. Thank you. Thank you all for your vigorous arguments. The court will reserve decision.